UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KENYATTE WILLIAMS,

                         Petitioner,

**OPINION & ORDER**
**CV-09-0363 (SJF)**

-against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

                         Respondent.
----------------------------------------------------------X
FEUERSTEIN, J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ OCT 12 2011 ★
LONG ISLAND OFFICE

On August 10, 2004, a judgment of conviction was entered against petitioner Kenyatte Williams ("petitioner") in the County Court of the State of New York, Suffolk County (Hinrichs, J.), upon a jury verdict finding him guilty of murder in the second degree (N.Y. Penal Law § 125.25(1) (intentional murder)) and imposition of sentence. On December 29, 2008[1], petitioner filed a petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By order entered July 9, 2009, petitioner's motion to stay this proceeding pending exhaustion of his ineffective assistance of appellate counsel claim in state court was denied. On October 13, 2010, petitioner, *inter alia*, again moved to stay this proceeding pending exhaustion of his ineffective assistance of appellate counsel claim in state court. For the reasons set forth herein, petitioner's

---

[1] Although the petition was received and docketed by the Clerk of the Court on January 2, 2009, petitioner's certificate of service indicates that he gave the petition to prison authorities to be forwarded to the Court on December 29, 2008. Thus, pursuant to the "prison mailbox rule," see Houston v. Lack, 487 U.S. 266, 270-271, 108 S.Ct. 2374, 101 L.Ed.2d 245 (1988); see also Fernandez v. Artuz, 402 F.3d 111, 113-114 (2d Cir. 2005) (recognizing that the prison mailbox rule has been applied to fix the date on which a federal habeas corpus petition is filed), the petition was filed on December 29, 2008.

1

second application to stay this proceeding is denied and the petition is dismissed.

I. BACKGROUND

   A. Factual Background

      1. The People's Case

During the early morning hours of November 9, 2002, Claude Humphrey ("Humphrey") was fatally shot in a parking lot outside of a bar in North Lindenhurst, New York. Anthony Walker ("Walker"), a close friend of Humphrey, testified that after the bar owner closed the establishment because of a fight that had erupted, he walked outside with Humphrey and waited for his other friends to emerge, but Humphrey walked away. (T. 380-82). While he was waiting, Walker realized that a large group of patrons from the bar had gathered in a parking lot behind a printing company located across the street and that a man was on the ground and being beaten by a group of men. (T. 166-67, 171, 376-79, 382, 385-390, 395-400, 474-77). According to Walker, petitioner, whom he had known as a child and could identify by both appearance and name, (T. 387-88), was at the perimeter of the group holding a pistol in his right hand and pulling men away from the man on the ground with his left hand. (T. 386-390, 402, 406). An unidentified man then hit petitioner, but backed away after petitioner struck him with his gun. (T. 390, 402-03). Walker then observed Humphrey emerge from the sidewalk and strike petitioner, following which Humphrey and petitioner exchanged a few blows until petitioner leveled his gun at Humphrey's chest. (T. 390, 396-400, 404-08). As Walker ran toward Humphrey yelling "He's got a gun. He's got a gun," (T. 406), Humphrey put his hand out as if to block any shot fired from the gun. (T. 391, 407-08). Petitioner then fired the gun three (3) times,

striking Humphrey with two (2) of the shots. (T. 390, 407, 480). Curtis Whitehead ("Whitehead"), another patron from the bar, also testified that he had heard three (3) shots fired. (T. 474-81, 484). Dr. James Wilson ("Wilson"), the Deputy Medical Examiner for Suffolk County, testified that the first bullet that struck Humphrey had entered his left fist while it was clenched in a fist in front of his body, then it entered his chest and perforated his heart. (T. 1301-37). The second bullet that struck Humphrey had entered his chest directly and struck his spine. (Id.) According to Wilson, the gunshot wounds caused Humphrey's death. (T. 1295-1336).

Walker testified that following the third shot, petitioner walked quickly away from the area and got into the rear passenger seat of a "fairly new," dark red or burgundy, four (4)-door car that had pulled up. (T. 406, 408-10). According to Walker, the car drove away in the direction of Amityville. (T. 412-14). Whitehead testified that after he heard the shots he observed a husky black man wearing a puffy black jacket run from the parking lot and get into the passenger side of a new-looking burgundy car bearing license plate number BVH-7408 that then pulled away. (T. 474-81, 484, 487-98, 500, 555-56). Astride Bernard ("Bernard"), petitioner's girlfriend with whom he lived at 12 Surrey Drive, Amityville, New York at the time of the incident, testified that in November 2002, petitioner drove a burgundy car that a friend had rented for him. (T. 565-68). Edward Hart, of Avis Rent-A-Car ("Avis"), testified that a red, four-door Oldsmobile Alero, bearing license plate number BVH-7408 ("the Alero"), had been owned by Avis, rented to Darryl Rollins ("Rollins") on October 17, 2002 and was due to be returned on November 14, 2002. (T. 631-36). Rollins told the police that he had rented the car as a favor for two people, Shamel Snell, a/k/a "Sha," ("Snell") and Naphetia Allen, a/k/a "Nighty," and that he had never used the car. (T. 368-72, 1143). The police eliminated Snell as a suspect in Humphrey's

shooting because he did not fit the shooter's description. (T. 1184-85).

Walker testified that he identified petitioner as Humphrey's shooter to the detectives at the hospital where Humphrey was taken and described petitioner as being approximately five feet ten inches (5' 10") tall, weighing approximately two hundred fifty (250) pounds, having brown skin and a thin beard along the jaw line and wearing a black coat, possibly made of leather, a skull cap, tan sweat pants, Timberline boots and glasses. (T. 389-90, 412, 427). Bernard testified that when petitioner returned home at approximately five o'clock in the morning (5:00 a.m.) on November 9, 2002, he was wearing blue jeans, a black jacket, a beige shirt and prescription glasses. (T. 570-73). She also testified that petitioner had a thin beard along his jaw line and a cut on his hand that was bleeding. (Id.) On cross-examination, Bernard testified that she had been intimidated by the police and district attorney and that petitioner had actually been wearing a blue hat, blue shirt and blue sweat pants when he had gone out that evening. (T. 389-95, 597-99). On redirect examination, Bernard testified that she had never been threatened by the police or district attorney and that petitioner almost always wore a skull cap. (T. 613, 617, 623).

According to Bernard, when she and petitioner later went into their bedroom, petitioner was crying. (T. 575). When she asked him why he was crying, petitioner responded that it had been "the heat of the moment" and he asked Bernard not to leave him. (Id.) On cross-examination, Bernard admitted she learned after petitioner's arrest that he had cheated on her. (T. 582-86).

On November 9, 2002, at approximately 6:52 a.m., Detective Vincent Stephan located the Alero parked in front of 15 Surrey Drive, Amityville, New York, across the street from petitioner's home at 12 Surrey Drive. (T. 640-42, 645, 647, 1133). Approximately four (4)

hours later, an unidentified black female drove off in the Alero. (T. 650-51, 724-29). Alisha Lee ("Lee"), who lived at 15 Surrey Drive, recalled seeing the Alero parked in her driveway during the morning of November 9, 2002, but she did not know how it had got there or who moved it later that morning. (T. 461-63). Lee further testified that she had seen both Snell and petitioner drive the Alero on prior occasions. (T. 463). The Alero was not seen again until approximately 6:01 p.m. on November 10, 2002, when it was located parked in front of petitioner's home at 12 Surrey Drive. (T. 724-29). Petitioner was not at home on November 10, 2002. (T. 651-53).

When the Alero was impounded later that day, an envelope addressed to petitioner at 12 Surrey Drive was recovered from the center console. (T. 137). DNA analysis from a stain observed on the headrest in the front passenger seat was consistent with originating from Humphrey. (T. 266-77, 757-85, 868, 871-78). No identifiable fingerprints were recovered from the Alero. (T. 139).

The police were unable to locate petitioner until November 19, 2002, when he was arrested at his home for Humphrey's murder. (T. 1023-25, 1029-33, 1188-92, 1199-1200). At the time of his arrest, petitioner was five feet ten inches (5' 10") tall and weighed two hundred seventy (270) pounds. (T. 1194, 1219). A Suffolk County grand jury indicted petitioner for murder in the second degree in violation of New York Penal Law §§ 125.25(1) (intentional murder) and 125.25(2) (reckless murder).

2. The Defense

Teneka Williams, petitioner's older sister, and Ebony McKnight, petitioner's first cousin, testified that there were no cuts, marks, scratches or bruises on petitioner's hands or body on the

morning of November 9, 2002. (McKnight: T. 1359-62; Teneka: T. 1400-02).

Vershura Sims ("Sims"), the mother of petitioner's child, testified that she saw petitioner at the bar prior to the shooting and that he had been wearing a baby blue and navy sweater, dark jeans and no coat. (T. 1424-25). On November 10, 2002, Sims took photographs of petitioner's hands to demonstrate the absence of any cuts and of petitioner wearing the light and dark blue sweater he claimed he had been wearing on the night of the incident. (T. 1421-34, 1455).

Shauntel Sims ("Shauntel"), Sims's sister, testified that after the owner had closed the bar, she left with petitioner, who was wearing a multi-colored dark blue, lighter blue and beige shirt, a hat and dark jeans. (T. 1503-07). According to Shauntel, she waited with petitioner by his car for her friend to arrive, at which time she saw a fight erupt and then she heard two (2) or three (3) gunshots. (T. 1495, 1508-13, 1517-19). Shauntel testified that after the shots were fired, petitioner told her to get into her car and leave. (Id.) She got into her car, but she did not leave. (Id.) She then saw Joseph Moore, a/k/a "Joe Joe," run by her car holding a gun and jump into a car driven by Tyrone Nixon ("Nixon"), which was parked in front of her car. (Id.) Junius Wilson, a/k/a "Dooney," who was one of the participants in the fight that had erupted inside the bar, (T. 1490-98), and his brother Sean were also in Nixon's car. (T. 1508-13, 1517-19). According to Shauntel, Sean resembled petitioner insofar as both are heavyset and have short hair, although Sean is "two skin tones darker" than petitioner. (Id.) Shauntel further testified that the Wilson brothers were wearing black hoodies. (Id.) Shauntel testified that she saw petitioner drive away. (Id.)

### 3. Rebuttal Case

On rebuttal, Sergeant Madden ("Madden") testified that when he interviewed Sims and Shauntel, they had both told him that they had left the bar before the shooting. (T. 1592, 1596).

### B. Procedural Background

On August 10, 2004, a judgment of conviction was entered against petitioner in the County Court, Suffolk County (Hinrichs, J.) (the trial court), upon a jury verdict finding petitioner guilty of murder in the second degree in violation of New York Penal Law § 125.25(1) (intentional murder), and imposition of sentence to an indeterminate term of imprisonment of twenty-five (25) years to life.

Petitioner appealed the judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("the Appellate Division") on the grounds, *inter alia*: (1) that the trial court improperly permitted the prosecutor (a) to bolster Walker's prior in-court identification of petitioner with the testimony of Madden on redirect examination, and (b) to impeach her own witness with that witness's prior inconsistent statement; (2) that petitioner was denied a fair trial by the cumulative effect of the prosecutor's improper statements during summation; (3) that the verdict was legally insufficient and against the weight of the evidence; and (4) that the sentence imposed was harsh and excessive.

On August 7, 2007, the Appellate Division affirmed the judgment of conviction, finding, *inter alia*: (1) that it was proper for the prosecutor to elicit from Madden on redirect examination the portions of Walker's statement that had not been introduced on cross-examination; (2) that the verdict was not against the weight of the evidence; (3) that the sentence imposed was not

excessive; and (4) that petitioner's remaining contentions were unpreserved and, in any event, without merit. People v. Williams, 43 A.D.3d 414, 414-415, 840 N.Y.S.2d 815 (2d Dept. 2007). On October 1, 2007, the Court of Appeals of the State of New York denied petitioner's application for leave to appeal to that court from the August 7, 2007 order of the Appellate Division. People v. Williams, 9 N.Y.3d 965, 848 N.Y.S.2d 34, 878 N.E.2d 618 (2007). Thus, petitioner's judgment of conviction became final on December 31, 2007[2], when his time expired to seek direct review by writ of certiorari to the United States Supreme Court. See Rule 13(1) of the Rules of the Supreme Court of the United States; 28 U.S.C. § 2101(d); see generally Jimenez v. Quarterman, 555 U.S. 113, 129 S.Ct. 681, 685-686, 172 L.Ed.2d 475 (2009).

On or about December 29, 2008, petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his Fifth, Sixth and Fourteenth Amendment rights to due process and a fair trial were violated: (1) by the trial court's evidentiary rulings permitting the prosecutor (a) to bolster Walker's prior in-court identification of him petitioner with the testimony of Madden on redirect examination, and (b) to impeach a witness with that witness's prior inconsistent statement; (2) by the cumulative effect of the prosecutor's improper statements during summation; and (3) because the verdict was legally insufficient and against the weight of the evidence. Respondent filed his return on April 6, 2009.

On May 22, 2009, petitioner sought a stay of this proceeding in order to afford him the opportunity to file in the state court an application for a writ of error coram nobis seeking to vacate the Appellate Division's August 7, 2007 order on the ground of ineffective assistance of

---

[2] December 30, 2007 being a Sunday.

appellate counsel.[3] By order entered July 9, 2009, I construed petitioner's application seeking a stay to also seek leave to amend the petition; denied petitioner leave to amend his petition to assert an ineffective assistance of appellate counsel claim on the basis that any such amendment would be futile since that claim was barred by the one (1)-year limitations period set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2244(d), and there was no statutory or equitable basis upon which to toll the limitations period; and denied petitioner's application to stay this proceeding.

On or about October 13, 2010, petitioner again sought to stay this proceeding pending his exhaustion of his ineffective assistance of appellate counsel claim in state court or, in the alternative, to dismiss this proceeding without prejudice to re-filing a petition upon his exhaustion of that claim in state court.

On May 17, 2011, the Appellate Division denied petitioner's application for a writ of error coram nobis, finding that petitioner had "failed to establish that he was denied the effective assistance of appellate counsel." People v. Williams, 84 A.D.3d 1131, 923 N.Y.S.2d 338 (2d Dept. 2011). There is no indication in the record that petitioner ever sought leave to appeal from that order to the New York State Court of Appeals. See N.Y. Crim. Pro. L. §§ 450.90(1) (authorizing review by the New York State Court of Appeals of an intermediate appellate court's determination of an ineffective assistance of appellate counsel claim); 460.10(5)(a) (providing that an application for a certificate granting leave to appeal to the New York State Court of

---

[3] In his declaration in support of his application to stay, petitioner indicated that he had drafted "and *[was] prepared to* submit," (Pet. Decl., ¶ 1) (emphasis added), a writ of error coram nobis to the state court, thus indicating that he had not yet filed his petition for a writ of error coram nobis in the state court as of the date he filed his motion to stay.

Appeals must be filed within thirty (30) days after service of a copy of the order from which appeal is sought); 460.30(1) (permitting an extension of the thirty (30) day period for seeking leave to appeal if sought within one (1) year from the date of service of the order from which appeal is sought upon the grounds that the failure to timely file resulted from (a) improper conduct of a public servant or improper conduct, death or disability of the defendant's attorney or (b) an inability of the defendant and his attorney to have communicated regarding whether an appeal should be taken). Thus, petitioner has still not exhausted his ineffective assistance of appellate counsel claim in state court.

Where a district court is faced with a "mixed" petition containing both exhausted and unexhausted claims it may: (1) stay the proceeding pending complete exhaustion of state remedies; (2) dismiss the petition, without prejudice, until the claims have been exhausted in state court, unless such review would be precluded pursuant to the AEDPA's one (1)-year statute of limitations; (3) afford petitioner an opportunity to withdraw the unexhausted claim(s); or (4) deny the petition on the merits pursuant to 28 U.S.C. § 2254(b)(2). See, e.g. Gandarilla v. Artuz, 322 F.3d 182, 186 (2d Cir. 2003); Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir. 2002). The petition in the instant case contains both exhausted and unexhausted claims. For the reasons set forth in the July 9, 2009 order, petitioner's ineffective assistance of appellate counsel claim does not relate back to the claims he raised in his original petition and is time-barred by the AEDPA's one (1)-year limitations period. Accordingly, the first and second options, i.e., staying the proceedings pending exhaustion or allowing withdrawal of the petition without prejudice, are not appropriate. See, e.g. Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005) (holding that a stay and abeyance should only be available in "limited

circumstances," i.e., "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that the stay should not be granted "when [the petitioner's] unexhausted claims are plainly meritless.") Upon review of the remaining options available to this court, and for the reasons set forth below, the petition is dismissed.

II. DISCUSSION

A. Procedurally Defaulted Claims

A federal court may not review a state prisoner's federal claims if the claims were denied in state court pursuant to an independent and adequate state law ground, see Walker v. Martin, — U.S. —, 131 S. Ct. 1120, 1127, 179 L.Ed.2d 62 (2011), "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that he is actually innocent of the crime for which he was convicted. Coleman v. Thompson, 501 U.S. 722, 749-750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); see also Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011), cert. denied, — S.Ct. —, 2011 WL 4534718 (Oct. 3, 2011). In order for a claim to be procedurally defaulted such that federal habeas review is precluded, the state court's reliance on state law must be "clear from the face of the opinion." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000) (internal quotations and citation omitted); see also Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006). If a state court holding contains a plain statement that a claim is procedurally defaulted then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S.Ct. 1038, 103

11

L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision); see also Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007). When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is procedurally defaulted. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

On appeal, the Appellate Division rejected the following claims as "unpreserved for appellate review" pursuant to N.Y. C.P.L. § 470.05(2): (1) that the trial court erred in allowing the prosecutor to impeach her own witness with the witness's prior inconsistent statement; (2) that the prosecutor's improper comments during summation deprived petitioner of a fair trial; and (3) that the evidence was legally insufficient. People v. Williams, 43 A.D.3d at 415, 840 N.Y.S.2d 815. The Appellate Division only determined the merits of those claims "in any event." Id. Thus, the Appellate Division clearly invoked an independent and adequate state procedural rule as a basis for its rejection of petitioner's claims regarding the legal sufficiency of the evidence, the prosecution's use of a prior inconsistent statement to impeach its own witness and the prosecutor's comments during summation. See, e.g. Downs v. Lape, — F.3d —, 2011 WL 4057173, at * 3-7 (2d Cir. Sept. 14, 2011) (holding that New York's "contemporaneous objection rule," N.Y. Crim. Pro. L. § 470.05(2), constitutes an independent and adequate state law ground for disposing of a claim); Richardson v. Greene, 497 F.3d 212 (2d Cir. 2007) (accord). Since petitioner has not demonstrated cause for his failure to raise those claims in state court, actual prejudice therefrom, or that he is actually innocent of the crime for which he was convicted, those claims are dismissed as procedurally defaulted.

B.  Standard of Review under AEDPA

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus that has met the procedural prerequisites of the AEDPA:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (citing Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)).

The Supreme Court has made it clear that "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. ---, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2795 n.5, 61 L. Ed. 2d 560 (1979) (Stephens J., concurring)). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous;" it must have been "objectively unreasonable." Sellan, 261 F.3d at 315 (quotations and citation omitted); see also Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007).

Claims that were not adjudicated on the merits in state court are not subject to the

13

deferential standard that applies under AEDPA. See, e.g., Cone v. Bell, --- U.S. ---, ---, 129 S. Ct. 1769, 1784, 173 L. Ed .2d 701 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, the "state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010), cert. denied, 131 S.Ct. 1693, 179 L.Ed.2d 645 (2011) (citing 28 U.S.C. § 2254(e)(1)). Under AEDPA's deferential standard of review, "'[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1401, 179 L. Ed. 2d 557 (2011) (quoting Williams v. Taylor, 529 U.S. 420, 437, 120 S. Ct. 1495, 146 L.Ed.2d 435 (2000)).

1. Evidentiary Rulings

Petitioner alleges that the state court erroneously permitted the prosecutor to bolster Walker's prior in-court identification of him with Madden's testimony on redirect examination.

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a); Swarthout v. Cooke, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011); Carvajal, 633 F.3d at 109, and "does not lie for errors of state law." Swarthout, 131 S.Ct. at 861 (quoting Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); see also Wilson v. Corcoran, 131 S. Ct. 13, 16, 178 L. Ed. 2d 276 (2010). As such, challenges to the admissibility of evidence are cognizable on habeas review only if the petitioner can establish that the decision to admit the evidence rendered the trial so fundamentally unfair as to deny him or her due process of law. See Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998); see also

14

McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 Fed. Appx. 69, 72-73 (2d Cir. May 24, 2011) ("[A] state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review * * * unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings[.]") An erroneous evidentiary ruling does not amount to a constitutional violation unless the evidence in question was "so extremely unfair that its admission violate[d] fundamental conceptions of justice." Dunnigan, 137 F.3d at 125 (citing Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 [1990]). In order to constitute a denial of due process, the prejudicial evidence erroneously admitted "must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. (internal quotations and citations omitted); see also McKinnon, 422 Fed. Appx. at 73. In short, the erroneously admitted evidence, viewed "in light of the entire record before the jury," Dunnigan, 137 F.3d at 125, must have been "crucial, critical, highly significant." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985).

While New York law prohibits bolstering, "it is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial." Nieves v. Fischer, No. 03 Civ. 9803, 2004 WL 2997860, at * 7 (S.D.N.Y. Dec. 28, 2004)(citations omitted); see also Ochoa v. Breslin, — F.Supp.2d —, 2011 WL 2852820, at * 7 (S.D.N.Y. July 13, 2011). Courts in this circuit have repeatedly held that "the concept of 'bolstering' really has no place as an issue in criminal jurisprudence based in the United States Constitution," Nieves, 2004 WL 2997860, at * 7, and is a state law evidentiary issue. See e.g. Glover v. Burge, 652 F.Supp.2d 373, 377 (W.D.N.Y. 2009) ("'[B]olstering' of a prosecution

witness' testimony does not state a constitutional claim redressable on federal habeas review."); Lebron v. Sanders, 02 Civ. 6327, 2008 WL 793590, at * 20 (S.D.N.Y. Mar. 25, 2008) (holding that a violation of New York's "bolstering" rule does not rise to a constitutional level); Scott v. Walker, No. 01 CV 7717, 2003 WL 23100888, at * 8 (E.D.N.Y. Dec. 30, 2003)(holding that petitioner's challenge to certain bolstering testimony was not cognizable on habeas review); Smith v. Walsh, No. 00-CV-5672, 2003 WL 22670885, at * 6 (E.D.N.Y. Oct. 20, 2003)(holding that a bolstering claim is not a cognizable basis for federal habeas relief); Diaz v. Greiner, 110 F.Supp.2d 225, 234 (S.D.N.Y. 2000) (holding that bolstering claims are not cognizable on federal habeas review).

The admission of Madden's testimony on redirect examination, even if error under state law, did not result in any fundamental unfairness to petitioner so as to deprive him of his right to a fair trial. Considering the record as a whole, petitioner cannot demonstrate that Madden's testimony on redirect examination had a substantial and injurious effect on the verdict. Since any error in the admission of Madden's testimony does not rise to constitutional dimensions, petitioner's claim that the trial court improperly admitted bolstering testimony on redirect examination is not cognizable under federal habeas review.

2. Weight of Evidence

As set forth above, petitioner's legal insufficiency claim is dismissed as procedurally defaulted. To the extent petitioner claims that the verdict was against the weight of the evidence, that claim does not present a claim cognizable on federal habeas review. See McKinnon, 2011 WL 2005112, at * 4; Perez v. Smith, — F.Supp.2d —, 2011 WL 2411171, at * (E.D.N.Y. June 6,

2011); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y. 2006); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Accordingly, any such claim is dismissed.

III. CONCLUSION

For the reasons set forth above, petitioner's second application for a stay of his habeas petition is denied and the petition is dismissed in its entirety. The Clerk of the Court is directed to enter judgment in favor of respondent, to close this proceeding and to service notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* petitioner at his last known address, see Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: October 12, 2011
Central Islip, New York